*ABAT* vs. *NOLTE'S SYNDICS.*

APPEAL from the court of the first district.

MATTHEWS J. delivered the opinion of the court. This suit is brought to obtain a rescission of the sale of a lot of ground, situated in the suburb St. Mary, which the plaintiffs allege was sold and conveyed by them to the insolvents, previous to their failure, and for which they received no consideration; and in consequence of fraud in the contract, pray the sale to be annulled, and the property to be restored to them. Judgment was rendered in the court below for the defendants; from which the plaintiffs appealed.

The evidence of the case shews, that the lot in dispute, was conveyed, from the appellants to Nolte & Co. by a notarial act of sale, made on the 25th June, 1825; which contains an acknowledgement of the receipt of the price for which it was sold, as having been paid previous to the execuion of the act of sale. Two days after, the purchasers drew a bill of exchange in favor of J. Abat, for the sum of twenty-three thousand six hundred and twenty-five francs, on Hottengue & Co. in Paris; which the plaintiffs allege was the on-

EasternDis'et *May*, 1827.

If the bill of sale acknowledges payment of the price before the sale, and two days after the vendee give bills to the vendors, which are protested, the sale is not to be rescinded, even on an allegation of fraud, the vendors having no funds in the drawer's hands, if the latter were in the habit of accepting the vendor's bill.

ly consideration given as the price of the pro-
perty sold, and that it was given in fraud, and
with an intention to cheat and deceive them—
as the drawers had not at the time of making
and delivering the bill, any funds in the hands
of the drawees.    The oral testimony, as ex-
hibited on the record, raises a violent pre-
sumption, that this bill of exchange was in
truth given and received, as the price of the
lot; although the deed of sale acknowledges
payment, two days before the date of said
bill.

The principal, and perhaps the only ques-
tion which arises in this cause, proceeds from
the suggestion of fraud, in the manner of pay-
ment, practised by the vendees.   If they ac-
ted in bad faith, and intended to deceive the
sellers, by paying the price in a bill of ex-
change which they could not, by any fair cal-
culations in the course of trade, have expected
the drawees to accept and pay, their conduct
was fraudulent in a very high degree, and
perhaps sufficient, to violate and annul the
whole contract, so far as they alone are inter-
ested in it.   But the whole evidence shews
clearly, from the nature of the correspon-
dence, which existed between the house of
V. Nolte & Co. and that of Hottengeur &

EasternDis'ct
*May,* 1827.

AZAT
*vs.*
NOLTE'S SYN-
DICS.

Co, in Paris, that the former might have drawn on the latter in good faith, and in confident expectation of having their bills honored, at the period when the bill in question was drawn. It was probably owing to an event, disastrous in its effects, to many merchants of high standing, both in the United States and many parts of Europe, and which could not be or was not foreseen by the wisest among them, that the bill, which is now alleged to have been fraudulently imposed on the plaintiffs, was not accepted and paid. We have it in proof, in the present case, that the great and sudden diminution in the price of cotton, which took place in the markets of Europe, in the month of July, 1825, created a general alarm and distrust amongst merchants. It is true, as appears from the testimony of one of the witnesses, that V. Nolte & Co. had no funds in the possession of the drawees, at the time the bill was drawn; but they were in the constant habit of drawing in anticipation, on funds to be placed to meet their drafts. This, we believe to be a practice not unusual amongst merchants, who have been long in correspondence with each

EasternDis'cf
*May,* 1827.

ABAT
*vs.*
NOLTE's SYN-
DICS.

other, and where reciprocal credit has been well established, by a constant exchange of good faith and punctuality.

We, therefore, conclude that, in relation to the sale and transfer of the lot of ground in question, no fraud intervened, and that nothing has been shewn on the part of the appellants, which can legally invalidate the title obtained by the insolvents, and which has been regularly transferred to their syndics. The property must be considered as belonging to the estate of the bankrupts; and as such, liable to be disposed of according to law. Whether the plaintiffs may be entitled to any privilege on the price for which it may sell, as vendors, is a question not now to be settled.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be affirmed with costs.

*Denis* for the plaintiff, *Eustis* for the defendants.